# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re: )
 ) **JUDGE RICHARD L. SPEER**
Richard Witek/Jennifer Patterson-Witek )
 ) Case No. 07-32236
Debtor(s) )
 )

## DECISIONS AND ORDER

This cause comes before the Court on the Motion of the United States Trustee to Dismiss this case pursuant to 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3). A hearing was held on this matter. At the conclusion of this Hearing, the Court, finding their evidence to be incomplete, ordered the Debtors to submit updated financial information. The Debtors have since complied, with the United States Trustee thereafter filing a response to those financial figures provided by the Debtors. The Court has now had the opportunity to consider the Debtors' revised financial figures in light of the arguments made by the United States Trustee. Based upon this review, the Court finds that the Debtors' case should be dismissed under § 707(b)(1) and § 707(b)(2).

## BACKGROUND

With the implementation of the Bankruptcy Abuse and Consumer Protection Act in 2005, Bankruptcy Code § 707(b) underwent significant changes. Among these changes: Any debtor who, based upon a 'means test' calculation prescribed in 11 U.S.C. § 707(b)(2), is determined to have the ability to repay their debts is subject to having their Chapter 7 case dismissed on the basis of presumed abuse. 11 U.S.C. § 707(b)(1). In order to facilitate this determination, Official Forms were prescribed by the Judicial Conference of the United States. As a part of completing the applicable Official Form, a debtor is required to check a box so as to indicate whether a presumption of abuse does or does not arise.

**In re: Richard Witek/Jennifer Patterson-Witek**
**Case No. 07-32236**

On June 12, 2007, the Debtors, Richard and Jennifer Witek, filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. As required pursuant to Bankruptcy Rule 1007(b)(4), the Debtors filed with their petition Official Form 22A, entitled "Chapter 7 Statement Of Current Monthly Income and Means-Test Calculation." In performing the 'means test' calculation set forth in this form, the Debtors disclosed a significant monthly shortfall in their monthly income. Specifically, the Debtors set forth that, after accounting for permissible expenditures, their household budget experienced a monthly shortfall of $66,753.71. In arriving at this figure, the Debtors presumably made their calculation over a full calendar year as opposed to just one month. Notwithstanding, the Debtors, based upon the shortfall in their household budget, then set forth in Form 22A that no presumption of abuse arose in their case for purposes of § 707(b)(2). (Doc. No. 1).

On July 17, 2007, the Debtors filed an amended Form 22A. In this form, the Debtors disclosed that their monthly income exceeded their allowable monthly expenditures by $720.29. As then required, the Debtors set forth that, based upon this figure, it should be presumed that the filing of their case constituted an abuse for purposes of § 707(b). (Doc. No. 17). Shortly thereafter, the UST filed its Motion to Dismiss. (Doc. No. 19).

On August 9, 2007, after the UST filed its Motion to Dismiss, the Debtors filed a second amended Form 22A. In this Form, the Debtors set forth that no presumption of abuse arose in their case. (Doc. 27). This conclusion was the result of a significant downward adjustment in their monthly income. In their first amended Form 22A, in which the presumption of abuse arose, the Debtors set forth a combined monthly income of $6,485.67. In their second amended Form 22A, the Debtors set forth a combined monthly income of $4,581.07, a downward adjustment of $1,904.60, amounting to a 30% modification in their monthly income.

Page 2

In re: Richard Witek/Jennifer Patterson-Witek
Case No. 07-32236

After the Hearing was held on the Motion of the UST to Dismiss, the Debtors filed a third amended Form 22A. This amendment was filed in response to this Court's Order whereby the Debtors were directed to correct deficiencies with respect to their financial information so as to enable the Court to make an accurate assessment under § 707(b). (Doc. No. 30). In their third amended Form 22A, the Debtors again claimed that no presumption of abuse arose in their case because, under the means test formula of § 707(b)(2), their monthly budget showed a shortfall of $810.18. (Doc. No. 39). For this calculation, the Debtors, although initially setting forth in Form 22A that their current monthly income was $5,812.74, utilized the income figure of $4,581.07 as their starting point when performing the 'means test' calculation. *Id.* The UST, however, in prosecuting its Motion to Dismiss under § 707(b)(2), took issue with this transposition. (Doc. No. 37).

## DISCUSSION

This cause comes before the Court on the Motion of the United States Trustee to Dismiss case. As the determination of the dismissal of a bankruptcy case directly involves the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, this matter is a core proceeding over which this Court has been conferred with the jurisdictional authority to enter final orders. 28 U.S.C. §§ 157(b)(2)(J)/(O); 1334.

The Motion of the UST to Dismiss is brought pursuant to 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3). These sections operate together, with § 707(b)(1) setting the foundation. Under § 707(b)(1), it is provided that where the filing of a Chapter 7 case is found to be an abuse, the Court may dismiss the bankruptcy case filed by individual debtor whose debts are primarily consumer debts. *Id.* The purpose of this provision is self evident: debtors who seek to use the bankruptcy process to their unfair advantage will not be afforded its protections. *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989).

Page 3

In re: Richard Witek/Jennifer Patterson-Witek
Case No. 07-32236

Sections § 707(b)(2) and § 707(b)(3) then set forth separate methodologies by which a determination of abuse is to be assessed under § 707(b)(1). First, § 707(b)(2) provides, under a 'means test' formula, that abuse is to be presumed in instances where an ability to pay threshold is exceeded. Second, § 707(b)(3) sets forth that, even if no presumption of abuse arises, a court may still dismiss a case based upon the particular circumstances of the case.

A party, so long as they otherwise have standing to seek the dismissal of a debtor's case under § 707(b)(1),[1] may elect to proceed under either § 707(b)(2) or § 707(b)(3), or both as the UST has done in this matter. In either instance, the party bringing the action for dismissal carries the burden of proof. *In re Wright*, 364 B.R. 640, 643 (Bankr. N.D.Ohio 2007). Where, as here, the applicability of both provisions is raised, a determination as to the existence of abuse will go in order of numeration – that is, it begins with § 707(b)(2). This is because unless successfully rebutted, once the presumption of abuse arises under § 707(b)(2), the debtor's case is subject to dismissal regardless of whether particular circumstances of a case warrant a finding of abuse under § 707(b)(3).

Section 707(b)(2) establishes a 'means test' formula under which abuse may be presumed in instances where an ability to pay threshold is exceeded. Although very detailed in its operation, the 'means test' formula of § 707(b)(2) is conceptually simple. One first determines a debtor's income and then reduces that amount by those expenses permitted in the statute. 11 U.S.C. § 707(b)(2)(A). If, after performing this calculation, the debtor's remaining income, as calculated over a five-year period, satisfies one of these two conditions, the filing of the case is then presumed to be abusive: (1) the debtor's income is greater than $10,950.00; or (2) although less than $10,950.00, the debtor's income is greater than $6,575.00 and that amount will pay more than 25%

---

[1] For debtors that have an income below the applicable state median income for a like-size family, limitations are placed on who may bring an action under § 707(b). *See* 11 U.S.C. § 707(b)(6)/(7).

Page 4

In re: Richard Witek/Jennifer Patterson-Witek
Case No. 07-32236

of the debtor's unsecured debt. Respectively, these presumptive abuse thresholds total $182.50 per month and $159.58 per month.[2]

In their third amendment to the 'means test' calculation of § 707(b)(2), the Debtors claimed that no presumption of abuse arose in their case because, after subtracting their permissible expenses from their income, they had a shortfall in their budget of $810.10 per month. In coming to this conclusion, the Debtors utilized a monthly income of $4,581.07 and monthly expenses of $5,391.25. It is the position of the UST, however, that the Debtors' shortfall in their budget was improperly calculated and that the "correct amount is at least positive $421.49." (Doc. No. 37, at pg. 2). For its position, the UST relied on this single facet of the Debtors' 'means test' calculation: in their Third Amended Form 22A, the Debtors "understated their current monthly income by the amount of $1,231.67." *Id.*

As taken from their third Amended Form 22A, the Debtors, when performing the 'means test' calculation, first claimed $5,812.74 in monthly income, placing this figure, as required, on line 12 of Form 22A. Form 22A provides that the amount on line 12 is to be transferred to line 16. But in contrast with this directive, the Debtors placed on line 16 a lower income figure. Specifically, the Debtors placed on line 16 a monthly income of $4,581.07 – a figure apparently derived from their second amended Form 22A wherein this identical income figure had been previously utilized.

Line 16 of Form 22A operates as the basis from which those expenses permitted under the 'means test' are deducted. 11 U.S.C. § 707(b)(2)(A). Therefore, insofar as it concerns the Official Forms, the position of the UST is entirely accurate. In failing to properly transpose their income figure of $5,812.74 from line 12 to Line 16, and instead using the income figure of $4,581.07, the

---

[2] Pursuant to 11 U.S.C. § 104, these amounts are adjusted every three years to reflect changes in the Consumer Price Index.

In re: Richard Witek/Jennifer Patterson-Witek
Case No. 07-32236

Debtors, when using the Official Forms to perform the 'means test' calculation, understated their income by the amount of $1,231.67.

It is fundamental, however, that forms do not control over express statutory directives. *In re Lenton*, 358 B.R. 651, 657 n. 14 (Bankr. E.D.Pa. 2006). Thus, insofar as it concerns their Official Form 22A, the Debtors' failure to properly transpose their income from line 12 to line 16 is not automatically fatal to their position. The substantive question is instead which (if any) of the Debtors' income figures is accurate: the $5,812.74 listed on line 12; or the $4,581.07 on line 16. If, as the UST urges, the larger income figure is utilized, the filing of this case must be presumed to be abusive – $5,812.74 minus $5,391.25 equals $421.49, thus exceeding the $182.50 presumptive abuse threshold of § 707(b)(2). If, on the other hand, the smaller income figure is used, no presumption of abuse will exist in this case – $4,581.07 minus $5,391.25 leaves, as the Debtors calculated, a negative monthly income of $810.10.

Under the 'means test' of § 707(b)(2), a debtor's income, from which expenses are deducted, is determined by reference to the term "current monthly income." 11 U.S.C. § 707(b)(2)(A)(I). The Bankruptcy Code then specifically defines the term "current monthly income," often called CMI, to mean the average monthly income received by the debtor from all sources, but subject to some exceptions, during the six-month period ending on the last day of the calendar month immediately preceding the date of the commencement of the debtor's bankruptcy case.[3] 11 U.S.C. § 101(10A).

---

[3]

11 U.S.C. § 101(10A) provides, in full:

The term "current monthly income"–

> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on–

Page 6

In re: Richard Witek/Jennifer Patterson-Witek
Case No. 07-32236

It may thus be stated that a determination of a debtor's CMI is historical in outlook, becoming fixed at the time bankruptcy relief is sought and being comprised of the debtor's actual monthly income during the six months prior.

To help facilitate this determination, a debtor is under a duty, when they file a bankruptcy petition, to file "copies of all payment advices . . . received within 60 days before the date of the filing of the petition . . . ." 11 U.S.C. § 521(a)(1)(B)(iv). *See In re Miller*, 371 B.R. 509, 515 fn.16 (Bankr. D.Utah 2007). The Debtors, albeit late, complied with this duty. (Doc. No. 3, 4, 34 & 35). And with respect to their petition date of May 25, 2007, the payment advices submitted by the Debtors show as follows:

For the pay period ending on May 19, 2007, six days prior to the petition date, Mr. Witek had a gross year-to-date salary of $21,471.12. For the pay period ending May 28, 2007, 3 days after the petition date, Mrs. Witek had a gross year-to-date salary of $6,560.30. For Mr. Witek, this amounts to an average wage of $154.47 per day, or $4,634.10 per month. (May 19, 2007, was the 139th day

---

> (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
>
> (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
>
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

Page 7

of the year). For Mrs. Witek, her salary amounts to an average wage of $44.33 per day, or $1,329.90 per month. (May 18, 2007, was the 148th day of the year). When combined, the pay advices submitted by the Debtors show that they have a gross monthly household income of $5,964.40.

To be sure, this is only an approximation. However, with no evidence showing to the contrary, it can be safely stated that this Court's calculation of the Debtors' combined monthly income is significantly more representative of the CMI listed by the Debtors on line 12 of their Form 22A, *i.e.*, $5,812.74, as opposed to line 16, *i.e.*, $4,581.07. As such, the weight of the evidence in this case supports those positions advocated by the UST.

First, by not carrying forward the $5,812.74 listed as income on line 12 of Form 22A to line 16, the Debtors incorrectly stated their CMI, and thus made a mistake in their 'means test' calculation of § 707(b)(2). Second, once this mistake is corrected, and then set against the Debtors' permissible monthly expenses of $5,391.25, a figure of $421.49 is realized for purposes of the 'means test' calculation of 707(b)(2)(A)(i). Finally, as the figure of $421.49 exceeds $182.50, the latter being the higher of the two presumptive abuse thresholds set forth in § 707(b)(2)(A), the filing of the Debtors' case must be presumed to be an abuse.

Once the presumption of abuse arises under § 707(b)(2), the Court is required to dismiss the case unless the debtor can successfully rebut the presumption. The requirements to rebut the presumption are statutory, as set forth in § 707(b)(2)(B) which provides:

> (B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

Page 8

In re: Richard Witek/Jennifer Patterson-Witek
Case No. 07-32236

The effect of this section is to give the Court some discretion to allow changes in the 'means test' equation when equity so compels. *In re Castle*, 362 B.R. 846, 850 (Bankr. N.D.Ohio 2006). But as this Court has also noted, § 707(b)(2)(B) "goes on to set this bar extremely high, placing it effectively off limits for most debtors." *In re Wright*, 364 B.R. 640, 642 (Bankr. N.D.Ohio 2007).

According to its statutory text, a party seeking to rebut the presumption under § 707(b)(2)(B)(i) must clear at least two hurdles. First, the debtor must show a 'special circumstance' which justifies an adjustment to the debtor's income or expenses. To qualify as a 'special circumstance' the situation presented by the debtor must have traits in common with those examples given in the statute – i.e., a serious medical condition or a call or order to active duty in the Armed Forces. *In re Castle*, 362 B.R. at 850-51. Second, the debtor must show that there is no reasonable alternative but to make the adjustment. *In re Thompson*, 370 B.R. 762, 773 (N.D.Ohio 2007).

In this matter, the only circumstances raised by the Debtors which could potentially qualify as a 'special circumstance' is Mrs. Witek's assertion that her work options are presently limited due to a pending pregnancy. But even assuming that this qualifies as a special circumstance, no evidence was presented as to how her pregnancy would necessitate adjustments to the Debtors' income and/or expenses for which there was no reasonable alternative. *See In re Martin*, 371 B.R. 347, 354-55 (Bankr. C.D.Ill. 2007) (finding pregnancy constituted a special circumstance under § 707(b)(2)(B)(i)). Additionally, the Debtors, with specific regards to Mrs. Witek's pregnancy, have not met these other necessary conditions to rebut the presumption of abuse as further set forth § 707(b)(2)(B):

> (ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide–
>
> > (I) documentation for such expense or adjustment to income; and

Page 9

In re: Richard Witek/Jennifer Patterson-Witek
Case No. 07-32236

> > (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.
>
> (iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

The burden of proof to rebut the presumption of abuse is on the debtor. *See, e.g., In re Singletary*, 354 B.R. 455, 462 (Bankr. S.D.Tex. 2006). Resultantly, based on the foregoing discussion, the Court cannot find that this burden has been met. Likewise, and also based on foregoing discussion, the evidence shows that the UST has met its burden of demonstrating that the presumption of abuse has arisen for purposes of 'means test' of § 707(b)(2). As such, this case must be dismissed unless the Debtors expeditiously exercise their right to convert their case to one under another Chapter of the Bankruptcy Code.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

**ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on ***Monday, December 10, 2007***, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

In re: Richard Witek/Jennifer Patterson-Witek
Case No. 07-32236

***IT IS FURTHER ORDERED*** that, subject to the Debtors' election to convert this case to a Chapter 13, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(2), be, and is hereby, GRANTED.

Dated:	November 29, 2007

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 11

# CERTIFICATE OF SERVICE

Copies were mailed this 29th day of November , 2007 to:


Dean Wyman ust03
Office of the US Trustee
Howard M. Metzenbaum U.S. Court House
201 Superior Avenue, Suite 441
Cleveland, OH 44114-1240

United States Trustee
Howard M. Metzenbaum U. S. Courthouse
201 Superior Avenue, East
Suite 441
Cleveland, OH 44114

John N Graham
5151 Monroe St
#245
Toledo, OH 43623

Phillip Browarsky
43 S. Huron Street
Toledo, OH 43602

Richard P Witek
422 S. Fargo
Oregon, OH 43616

Jennifer J Patterson-Witek
422 S. Fargo Street
Oregon, OH 43616

Patti H. Bass
3936 E. Ft. Lowell Rd.
#200
Tucson, AZ 85712

Household Bank (SB), N.A.
c/o Bass & Associates, P.C.
3936 E. Ft. Lowell Road, Suite #200
Tucson, AZ 85712

Gregory Stout
801 W. Jefferson
Louisville, KY 40202

                                          /s/Dawn Serna-Gensch
                                  Deputy Clerk, U.S. Bankruptcy Court